U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

DEC 19 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| JULIE DAVIDSON | CIVIL ACTION NO. 06-2312 |
| VERSUS | JUDGE DONALD E. WALTER |
| WEYERHAEUSER COMPANY | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment filed on behalf of defendant, Weyerhaeuser Company [Doc. #12] pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes the motion [Docs. #14 & 16]. For the reasons assigned herein, defendant's motion is **GRANTED**, and plaintiff's claims are **DISMISSED**.

## STATEMENT OF THE CASE

Plaintiff, Julie Davidson, brings this action against Weyerhaeuser Company alleging she was wrongfully discharged from her job after suffering a workplace injury; plaintiff seeks damages for personal injuries, mental anguish, pain and suffering, wrongful termination, lost wages, medical expenses, and loss of insurance benefits and loss of retirement benefits.

On July 4, 2006 plaintiff, while employed by Weyerhaeuser Company, plaintiff was injured in the course and scope of her employment as a forklift operator at defendant's plant in Simsboro, Louisiana. The injury came about when plaintiff stepped off the forklift and her right foot and ankle were rolled and caught between two separated runner boards. After notifying another employee of her injury, a supervisor was called to the scene and plaintiff was taken to the break room where she received first aid treatment, including Extra Strength Tylenol and a brace

for her ankle. Plaintiff did not immediately request medical treatment from a physician.[1]

Plaintiff did not work on July 5 or July 6, 2006 due to scheduled off days. Plaintiff returned to work on July 7, 2006 for her regular 7 am to 7 pm shift and was assured by her supervisor, Buddy Sims, that she would have assistance from July 7th-9th during her shifts to avoid heavy work.

On July 7, 2006, plaintiff was assisted by Bill Fitch and her sister so that she only participated in light duty work. On July 8, 2006 Buddy Sims was not in the office and plaintiff received less assistance than the day before until her sister arrived to provide help at 3 pm. On July 9, 2006 plaintiff did not receive assistance until her sister arrived at 3 pm. Plaintiff complained to supervisor Jimmy Shuff near the end of her July 9, 2006 shift that she did not receive the help promised.

Plaintiff was off July 10, 2006 and was scheduled for a mandatory down day on July 11, 2006 during which time she was scheduled to help clean the plant.[2] During plaintiff's scheduled down day, the shift supervisor, John Spangler, directed her to operate a forklift rather than clean up so that plaintiff would not risk slipping and falling.

On July 12, 2006 plaintiff worked her regularly scheduled shift. Plaintiff complained to Buddy Simms about having to work on the down day and about continued pain and swelling in her ankle. At the end of plaintiff's shift, plaintiff failed to remove 4-by-4's from the floor of the

---

[1] Plaintiff indicates in her deposition that she felt her supervisors did not want her to see a doctor because that would risk breaking the safety record of consecutive days without an injury requiring time to be missed from work.

[2] The mandatory "down days" of the plant required workers to go in for an abbreviated shift to help clean the plant. The schedules were made out to cover six month periods. Employees were on a point system and non-attendance would result in a three point deduction. Deduction of enough points would lead to termination.

warehouse, and as a result received a "near-miss" report indicating that there was a hazard left on the floor.

On July 13, 2006 plaintiff worked her regularly scheduled shift. During plaintiff's shift a number of extra trucks arrived at the warehouse to be loaded. Plaintiff did not have extra help and was slowed by her ankle injury in unloading the trucks. The plant held a catered safety lunch on July 13. Plaintiff did not take a lunch break during the day, but was never told she could not take a break. Near the end of the regular lunch break, plaintiff picked up food to place in the break room for later in her shift. The caterer was removing the dessert brownies and plaintiff, upon not getting dessert, became upset and exclaimed, "What the heck?" (Plaintiff's Depo., p. 55, ln. 20). At 7 pm, the end of plaintiff's shift, Jimmy Shuff, a supervisor for Weyerhaeuser, called plaintiff into his office to discuss plaintiff's attitude and anger. Shuff believed plaintiff to be directing her anger towards him during her lunch outburst over the dessert. Plaintiff responded by complaining about the workload and her pain and swelling. Shuff then brought up plaintiff's near-miss to which plaintiff responded that she should have had help. The exchange escalated with both Shuff and the plaintiff raising their voices. During this escalation, plaintiff quit her job.

A couple of days after quitting, plaintiff met with Human Resources and indicated that her foot was not healing. She then saw a doctor for the first time. The visit was covered by workers' compensation and plaintiff was diagnosed with a level 3 sprain. Plaintiff was released on October 20, 2006 by her doctor to search for employment and return to work.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id.

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party is not required to negate the elements of the non-moving party's case. Lawrence, 163 F.3d at 311. However, where the moving party bears the burden of proof on an issue, it must produce evidence that would, if uncontroverted at trial, warrant a judgment as a matter of law. International Short Stop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S.Ct. 936 (1992).

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any

proof, the court will not assume the non-moving party could or would prove the necessary facts. Id.

Pursuant to Local Rule 56.1, the moving party shall file a Statement of Uncontested Facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for the purposes of the motion, unless specifically denied." Local Rule 56.2.

## LAW AND ANALYSIS

As stated above, plaintiff has brought claims against defendant for wrongful discharge resulting in lost wages, and loss of insurance and retirement benefits, mental anguish, personal injuries and medical expenses and lost wages.

### Wrongful discharge:

Louisiana law prohibits the discharge of an employee from employment because of said employee asserting a claim for benefits under Louisiana Workers' Compensation Laws or under any other laws of Louisiana or the United States. La. R.S. 23:1361(B). In order to have a cause of action for retaliatory discharge, an employee must prove that she was discharged either actually or constructively. Jones v. Honeywell Int. Inc., 295 F.Supp. 652, 663 (M.D.La., 2003). In this case, plaintiff admits to quitting her job. As such, an actual discharge did not take place.

Constructive discharge occurs when "an employee has quit her job under circumstances that are treated as an involuntary termination of employment." Haley v. Alliance Compressor LLC, 391 F.3d 644, 649 (5th Cir. 2004). "The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any

illegal conduct involved therein as if it had formally discharged the aggrieved employee." *Id.* Whether an employee would feel forced to resign depends on the facts of the case; the fifth circuit considers the following factors relevant in reaching that determination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]. *Id.* at 650. The standard to be met is a "reasonable employee" standard or "whether a reasonable person in the plaintiff's shoes would have felt compelled to resign." *Id.* The resigning employee bears the burden to prove constructive discharge. Jurgens v. EEOC, 903 F.2d 386, 390-391 (5th. Cir. 1990).

Plaintiff submits that actions by the employees of Weyerhaeuser created an environment that would have compelled a reasonable person to resign. However, plaintiff at no time was demoted. Her salary was not reduced. Her job responsibilities were not reduced and she was not reassigned to menial or degrading work. She was never reassigned to work under a younger supervisor. Plaintiff was not badgered, harassed or humiliated at work, nor was she offered early retirement. However, this list is not necessarily meant to be exhaustive. So, the question remains, do the circumstances surrounding plaintiff's resignation suggest that a reasonable person would have been compelled to resign?

While plaintiff continued to work with pain and swelling in her injured foot, her first request to see a doctor did not come until after she quit her employment. Although plaintiff did not receive the assistance she was promised July 8th-9th, 2006, she did not complain to her supervisor until the end of her shift on July 9, 2006. Plaintiff again complained of pain, swelling and about having to

work a scheduled "down day" on July 11th, but not until July 12, 2006. Plaintiff indicated that she felt her supervisors' actions, bringing ice and Tylenol and a brace, and their statements, that it was likely just a sprain, implied that they did not want her to consult a doctor in order to avoid risking breaking the company safety record.

Indeed, plaintiff may have reasonably felt some pressure not to break the company safety record. However, on July 12, 2006, plaintiff failed to clean her work station, leading to a near-miss. On the day plaintiff resigned from her job, plaintiff felt overworked due to extra trucks, but there is no evidence indicating defendant planned on the trucks arriving that day. Furthermore, plaintiff chose to skip her lunch and continue working, despite having lunch provided for her. Plaintiff was upset when the caterer removed the brownies before she could obtain one. When called into her supervisor's office she was questioned about her attitude and the near-miss. When this escalated into both parties raising their voices, plaintiff quit. Plaintiff's supervisor advised her to consider what she was doing, and plaintiff indicated she knew what she was doing and quit. Plaintiff concedes she was angry and almost immediately regretted her decision.

After considering all summary judgment evidence, and making all inferences in plaintiff's favor, this court finds that a reasonable person would not have felt compelled to resign; therefore, a constructive discharge did not take place and plaintiff's claim for wrongful discharge resulting in loss of insurance and retirement benefits must be dismissed.

### Mental Anguish:

Workers' compensation is an employee's exclusive remedy for a work-related injury caused by a co-employee, except for a suit based on an intentional act. LSA-R.S. 23:1032. Plaintiff contends that she suffered mental anguish as a result of her employer's actions. This claim is also known as intentional infliction of emotional distress.

In order to recover for mental anguish, a plaintiff must prove: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress by the plaintiff was severe; and (3) that the defendant desired or intended to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991).

In Louisiana, extreme and outrageous conduct consists of actions so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* Plaintiff contends that defendant's acts crossed these boundaries. However, "disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable." *Id.* at 1210. In White v. Monsanto, a supervisor lost his temper and used vile, profane language to address three workers he felt were not doing their jobs. *Id.* at 1210-1211. The court ruled that the plaintiff failed to establish a right to recover from the defendant for an intentional tort. *Id.* at 1210.

In this case, plaintiff contends that the totality of the circumstances, leading up to and including her supervisor's outburst resulted in her mental anguish. However, when plaintiff was physically injured, she immediately received first aid. Her supervisor at the time assured her that she would receive assistance when she returned to work. On the first day, she received the assistance she felt she had been promised. On the second day, she received less assistance, but did not complain to an on-site supervisor at the time. It was not until the end of the third day that she first complained. Plaintiff then had an off day and a scheduled down day. During this scheduled down day, plaintiff was made to work on a forklift, her usual job, rather than to help clean the warehouse. She did not complain of this until the following day. Plaintiff received a "near-miss" on this day,

and was notified of the "near-miss" during the heated exchange between plaintiff and her supervisor on the following day. Plaintiff's supervisor lost his temper, used profanity, and questioned plaintiff's recent quality of work. However, the supervisor's actions combined with the circumstances described herein leading up to the confrontation do not rise to a level of extreme and outrageous conduct so as to be completely intolerable to members of a civilized community. Rather, the events leading up to plaintiff's resignation can best be described as a series of misunderstandings and neglects that led to heightened frustrations and sensitivities by both plaintiff and her supervisors.

Plaintiff was injured and admittedly tired and upset. As discussed above, disciplinary action and conflict in a pressure-packed work environment are not ordinarily actionable. Plaintiff did not step forward and ask to see a doctor, she bottled her feelings, waiting until after events took place to voice her displeasure, thus leading to tension on both sides. As such, defendant's actions do not arise to extreme and outrageous conduct, nor is the requisite intent to cause mental anguish present in this case. As such, plaintiff's claim for damages resulting from mental anguish must be dismissed.

### Personal Injuries:

As noted above, workers' compensation is an employee's exclusive remedy for a work-related injury caused by a co-employee, except for a suit based on an intentional act. LSA-R.S. 23:1032. Although plaintiff contends that the injury to her foot was intentional, no evidence is provided that would allow this court to draw an inference of such intent. Furthermore, plaintiff, in her deposition, clearly states that the injury was an accident. As such, plaintiff's exclusive remedy for personal injuries related to her July 4, 2006 incident is under Louisiana Workers' Compensation laws.

### Conclusion:

For the reasons stated above, this Court finds that plaintiff has failed to establish essential elements of each of its claims. Therefore, defendant's motion is **GRANTED** and plaintiff's claims are **DISMISSED**.

*/s/ Donald E. Walter*
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE